UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

```
BEVERLY JEAN GARCIA,            ) 1:08-cv-01799-SMS
                                )
            Plaintiff,          ) DECISION AND ORDER DENYING
     v.                         ) PLAINTIFF'S SOCIAL SECURITY
                                ) COMPLAINT (DOC. 1)
MICHAEL J. ASTRUE,              )
COMMISSIONER OF SOCIAL          ) ORDER DIRECTING THE ENTRY OF
SECURITY,                       ) JUDGMENT FOR DEFENDANT MICHAEL J.
                                ) ASTRUE, COMMISSIONER OF SOCIAL
            Defendant.          ) SECURITY, AND AGAINST PLAINTIFF
                                ) BEVERLY JEAN GARCIA
_____)
```

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application of November 2, 2005, made pursuant to Title XVI of the Social Security Act (the Act), for supplemental security income (SSI), in which she had alleged that she had been disabled since November 1, 2004, due to trouble breathing and pain in her knee when she sat, stood, bent her knee, or walked. (A.R. 100-106, 129.) The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), manifesting their consent in writings signed by the parties' authorized representatives and filed on behalf of

1

Plaintiff on December 3, 2008, and on behalf of Defendant on December 10, 2008. Thus, the matter is assigned to the Magistrate Judge to conduct all further proceedings in this case, including entry of final judgment.

The decision under review is that of Social Security Administration (SSA) Administrative Law Judge (ALJ) Michael J. Haubner, dated March 27, 2008 (A.R. 8-13), rendered after a hearing held on January 17, 2008, at which Plaintiff appeared and testified with the assistance of an attorney (A.R. 14-40). A vocational expert also testified.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 26, 2008 (A.R. 1-3), and thereafter Plaintiff filed the complaint in this Court on November 20, 2008. Briefing commenced on September 2, 2009, and was completed with the filing of Defendant's brief on Ocober 5, 2009. The matter has been submitted without oral argument to the Magistrate Judge.

I. Jurisdiction

The Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), which provide that an applicant suffering an adverse final determination of the Commissioner of Social Security with respect to SSI benefits after a hearing may obtain judicial review by initiating a civil action in the district court within sixty days of the mailing of the notice of decision. Plaintiff filed his complaint on November 20, 2008, less than sixty days after the mailing of the notice of decision on or about September 26, 2008.
///////

## II. Standard and Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's

3

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

### III. Disability

#### A. Legal Standards

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last

4

fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.[1]

### B. The ALJ's Findings

The ALJ found that Plaintiff had severe impairments of asthma, chronic obstructive pulmonary disease, and chronic smoking, but Plaintiff had no impairment or combination thereof that met or medically equaled a listed impairment. (A.R. 10.) Plaintiff retained an unlimited exertional capacity to perform work, but she must avoid concentrated exposure to pulmonary

---

[1] All references to the Code of Federal Regulations are to the version in effect in 2008 unless otherwise stated.

5

irritants. (A.R. 10.) She could perform her past relevant work of assembler and thus had not been under a disability since November 2, 2005, the date the application for SSI was filed. (A.R. 12.)

### C. Plaintiff's Contentions

Plaintiff's arguments concern step three, at which Plaintiff contends that the ALJ failed to 1) consider adequately whether Plaintiff's impairments met a listed impairment, namely, §3.03A or 3.03B for asthma, and 2) state adequate reasoning concerning his conclusion that Plaintiff's impairments did not meet a listed impairment.

### IV. Facts[2]

The parties essentially agree on the only critical facts, which concern the medical symptoms, signs, events, and opinions pertinent to the precise requirements of listings for asthma, § 3.03A or 3.03B. (Pltf.'s brief pp. 3-4, Deft.'s brief p. 2.)

Dr. Enok Lohne, M.D., opined that a pulmonary function study, dated April 2003, showed moderate to severe obstructive lung disease; the recommendation was to avoid exposure to cigarette smoke. (A.R. 165.)

Plaintiff admitted having been out of medications in July 2004 (A.R. 163), but by August 2004 her peak flows were steady and had improved to the 270 ranges, which was the low, green zone for Plaintiff. Plaintiff was counseled on the importance of compliance with her asthma action plan. (A.R. 162).

Plaintiff was admitted to the hospital for acute

---

[2] Because Plaintiff has raised no issue involving the ALJ's findings concerning Plaintiff's credibility, and Plaintiff's contentions concern only the ALJ's reasoning at step three, the details of Plaintiff's testimony are not set forth.

exacerbation of asthma and hypoxia with cough, sinus drainage and sneezing, and fever on March 11, 2005. Plaintiff reported that she came to the emergency department infrequently and had experienced one previous attack four to five years before. (A.R. 216-218). An x-ray reflected no acute cardiopulmonary disease. (A.R. 210.) She remained in the hospital March 12, 2005, and was observed overnight. She reported smoking with a history of having smoked a half pack of cigarettes every day for the last twenty-seven years. She was much improved after treatment and was observed overnight; the impression was exacerbation of asthma by an upper respiratory tract infection. (A.R. 204-05.)

Plaintiff went to the emergency department at the hospital for treatment on July 7, 2005, for treatment for acute exacerbation of asthma with dyspnea; she was discharged as stable the same day with instructions. (A.R. 197-200.) On July 12, 2005, at a follow-up visit, Plaintiff was advised that quitting smoking was very important, and medication and a smoking cessation clinic were prescribed. (A.R. 196.)

In a follow-up visit in February 2006, Plaintiff admitted that she still smoked a pack of cigarettes and drank a six-pack of beer daily; her shortness of breath had not worsened, and she declined a new, follow-up pulmonary function test. (A.R. 193.) However, in February 2006, more tests were run; pulmonary function studies dated February 20, 2006, reflected mild obstruction and indicated values more than twice listing levels. (A.R. 170, 312-313). Izhar Hasan, M.D., examined Plaintiff and found that Plaintiff's breath sounds were symmetric, there were no rhonchi or rales, and the expiratory phase was within normal

7

limits. (A.R. 168.) His assessment was that Plaintiff had mild to moderate asthma. (A.R. 170-72.)

In May 2006, Plaintiff denied shortness of breath and reported that she was still smoking a pack per day. (A.R. 187.) In July 2006, a chest study was negative. (A.R. 186.)

On July 25, 2006, Plaintiff sought treatment at the emergency room for tightness of the chest that she had experienced for five days; she was treated for a moderate exacerbation of asthma. (A.R. 252-66.) She reported that she was still smoking and had run out of medications for a day. (A.R. 255.) A chest study was negative. Expiratory flow readings are included in the records. (A.R. 265.) She was discharged with medication. (A.R. 184-86, 252-66.)

Jon D. Hirasuna, M.D., opined that tests completed in October 2006 yielded an impression of mild to moderate obstructive airways disease, no evidence of restrictive dysfunction, a total lung capacity slightly above the normal predicted range, and reduced diffusing capacity. (A.R. 315-16.)

Plaintiff received treatment overnight at the emergency room on December 4 and 5, 2006, for shortness of breath and cough; she admitted that she had been out of Albuterol, Advent, and Singulair for about a month. She was advised to take her medications and quit smoking. (A.R. 236-48, 241.) Expiratory flow readings are included in the record. (A.R. 250.)

On the evening of June 14 and early morning of June 15, 2007, Plaintiff received treatment at the emergency department for several hours for shortness of breath and was discharged home as stable with advice to stop smoking. (A.R. 299-310.)

8

On July 6, 2007, Plaintiff received treatment for several hours in the emergency room for acute exacerbation of asthma with shortness of breath and wheezing. (A.R. 284-98.)

### V. The ALJ's Analysis at Step Three

The ALJ stated:

> **3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Apendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**
>
> The claimant does not have any of the requisite clinical findings so as to meet, equal or approach the level of severity discussed in Sections 3.02, 3.03, 20 CFR Part 404, Subpart P, Appendix 1 (*See,* Exhibit 2F, p. 4; Exhibit 6F, p. 29).

(A.R. 10.) The ALJ also analyzed the medical evidence in connection with determining Plaintiff's RFC:

> In terms of the claimant's alleged respiratory impairment, while no treating physician gave a residual functional capacity, the Family Practitioner consulting physician imposed no limits, noting a completely normal physical examination (Exhibit 2F, pp. 1-3, 7). While an older (pre-alleged onset date of disability, and well before claimant's protective filing date) pulmonary function study showed moderate to severe chronic obstructive pulmonary disease (Exhibit 1F, p. 10, of April, 2003), the more recent pulmonary function studies indicate values more than twice (i.e., no where near meeting) listing levels (Exhibit 2F, p. 4 and Exhibit 6F, p. 29). Furthermore, all claimant's chest x-rays are negative (Exhibit 4F, p. 6; 4F, p. 3; 5F, p. 43).
>
> While it appears claimant had one hospitalization for breathing problems since her alleged onset date (in March 2005; Exhibit 4F, pp. 37-38), that note indicates the only similar incident occurred 4-5 years earlier. Furthermore, while claimant alleges she needs a doctor or emergency room assisted breathing treatment 2 to 3 times every year, that is not supported by the medical evidence of record (*See,* e.g., "ED" assists "infrequent," Exhibit 4F, pp. 37-38).

(A.R. 11.)

The pertinent legal principles are established. It is

9

1 Plaintiff's burden to establish that her impairment met a
2 listing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). Mere
3 diagnosis of a listed impairment is not sufficient to sustain a
4 finding of disability; the claimant must also submit medical
5 findings equal in severity to <u>all</u> the criteria stated in the most
6 similar listing. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 529-30 (1990);
7 <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. §
8 416.925(d). Generally, specific medical findings are needed to
9 support the diagnosis and the required level of severity. 20
10 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not
11 required to state why a claimant failed to satisfy every
12 different section of the listing of impairments; rather, it is
13 sufficient to evaluate the evidence upon which the ultimate
14 factual conclusions are based. Otherwise, an undue burden would
15 be put on the social security disability process. <u>Gonzales v.</u>
16 <u>Sullivan</u>, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

17     The regulations governing the inquiry are specific and
18 extensive. In the listing of impairments, 20 C.F.R. Pt. 404,
19 Subpt. P, App. 1, § 3.00(A), it is provided that respiratory
20 disorders and any associated impairments must be established by
21 medical evidence that is provided in sufficient detail to permit
22 an independent reviewer to evaluate the severity of the
23 impairment. It specifies that the asthma listing specifically
24 includes a requirement for continuing signs and symptoms despite
25 a regimen of prescribed treatment. <u>Id.</u>  Further, because the
26 symptoms of chronic pulmonary disease are common to many other
27 diseases, a chest x-ray or other appropriate imaging technique is
28 required to establish chronic pulmonary disease, and pulmonary

function testing, such as spirometric pulmonary function testing, is required to assess the severity of the respiratory impairment once a disease process is established by appropriate clinical and laboratory findings. Id.

With respect to episodic respiratory diseases such as asthma, the regulations provide that the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment. Documentation for these exacerbations should include the date and time of treatment, treatment and response thereto, and clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies (ABGS). § 3.00(C).

The regulations define "attacks" of asthma as referred to in paragraph B of § 3.03 as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Id. "Hospital admissions" are defined as inpatient hospitalizations for longer than twenty-four hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction. Id. Detailed requirements for documentation of pulmonary function testing and chronic impairment of gas exchange are set forth. §3.00(E), (F).

The pertinent listing states:

11

>   3.03 Asthma. With:
>   A. Chronic asthmatic bronchitis. Evaluate under
>   the criteria for chronic obstructive pulmonary
>   disease in 3.02A;
>   Or
>   B. Attacks (as defined in 3.00C), in spite of
>   prescribed treatment and requiring physician
>   intervention, occurring at least once every 2
>   months or at least six times a year. Each
>   in-patient hospitalization for longer than
>   24 hours for control of asthma counts as two
>   attacks, and an evaluation period of at least
>   12 consecutive months must be used to determine
>   the frequency of attacks.

Further, § 3.02(A), referred to in § 3.03(A), provides:

>   3.02 Chronic pulmonary insufficiency.
>   A. Chronic obstructive pulmonary disease, due
>   to any cause, with the $FEV_1$ equal to
>   or less than the values specified in table I
>   corresponding to the person's height without
>   shoes. (In cases of marked spinal deformity,
>   see 3.00E.).... (table omitted).

Here, with respect to § 3.03(A), which requires an evaluation of Plaintiff's symptoms under the criteria for chronic pulmonary disease in 3.02A, Plaintiff does not suggest what evidence meets the stated criteria.

The ALJ did not ignore or overlook the relevant evidence. The ALJ referred to the record evidence, noting the results of tests performed back in April 2003 (A.R. 11, 165), but he concluded that the more recent studies indicated values more than twice listing levels which thus were nowhere near meeting the levels required in the listing. (A.R. 11, 170 [February 2006], 312 [October 2006].) He also pointed to the negative radiological studies. In addressing the evidence and specifically pointing out its deficiencies, the ALJ adequately set forth his reasoning.

Plaintiff does not point to any specific medical findings or other medical evidence that satisfies the very specific criteria

12

of the listing.

With respect to § 3.03(B), the listing specifically requires attacks at least once every two months or at least six times a year. Plaintiff's visits amounted to two per year for 2005 through 2007 (March 12, 2005, July 7, 2005, July 25, 2006, December 4, 2006, June 14, 2007, and July 6, 2007). Not all of Plaintiff's hospital treatments qualified as "hospitalizations" or "hospital admissions," but even if they had, Plaintiff's episodes still would not have met the requirements of the listing.

Further, the ALJ provided numerous citations to record evidence and pointed out that contrary to Plaintiff's testimony that she was fully treatment and medication compliant, the medical evidence of record showed otherwise, namely, that she smoked against medical advice and multiple orders to quit, and some of her breathing problem exacerbations occurred when she ran out of medication. (A.R. 12.) As the foregoing summary of the medical evidence reflects, substantial evidence supports this finding by the ALJ.

Plaintiff asserts that the ALJ's statement that Plaintiff had one "hospitalization for breathing problems since her alleged onset date (in March, 2005; Exhibit 4F, pp. 37-38 [A.R. 217-18]" (A.R. 11) demonstrates that the ALJ ignored significant portions of the record reflecting Plaintiff's other treatment at the hospital. However, in view of the ALJ's documented familiarity with the record, and considering the pertinent regulatory context, it is more likely that the ALJ is referring to hospital admissions for longer than twenty-four hours, the pertinent

period in the governing regulations for counting attacks and determining the intensity of the incident. Although Plaintiff received treatment at the hospital on other occasions, her stays were for periods shorter than twenty-four hours. (A.R. 199-200 [July 7, 2005]; 252 [July 25, 2006]; 236 [December 4 and 5, 2006]; 299 [June 14 and 15, 2007]; and 284 [July 6, 2007].)

The Court concludes that the ALJ stated adequate reasons for his conclusion that Plaintiff's impairments did not meet the listing.

Plaintiff challenges the ALJ's failure to find that Plaintiff's impairments equaled a listing as well as the ALJ's analysis of the issue.

Medical equivalence means that the medical findings regarding an impairment are at least equal in severity and duration to the listed findings. § 416.926(a). If a claimant does not exhibit one or more medical findings specified in the listing, or she exhibits all medical findings but one or more findings is not as severe as specified in the listing, then the impairment will be medically equivalent to the listing if the claimant has other medical findings related to the impairment that are at least of equal medical significance. § 416.926(a).

However, one who claims upon review that the ALJ erred in not determining and finding that a claimant's combined impairments equaled a listing must offer a theory of how the impairments combined to equal a listed impairment and point to evidence that shows that the claimant's combined impairments equal a listed impairment. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

14

Here, the ALJ expressly found that the impairments did not meet or equal a listed impairment. The foregoing detailed summary and analysis of the evidence and reasoning demonstrates that the ALJ's conclusion was supported by substantial evidence.

Plaintiff offers no theory, plausible or otherwise, as to how her pulmonary impairments combined to equal a listed impairment, and she points to no evidence that shows that her combined impairments equaled a listed impairment.

VI. Disposition

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Beverly Jean Garcia.

IT IS SO ORDERED.

**Dated:   April 1, 2010**                /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE

15